George PAPPAS, Appellant,

v.

UNITED STATES of America, Appellee.

Harry PAPPAS, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 4809, 4810.

United States Court of Appeals
Tenth Circuit.

Oct. 26, 1954.

David L. Stine, Ogden, Utah (J. A. Howell and Neil R. Olmstead, Ogden, Utah, on the brief), for appellants.

C. Nelson Day, Asst. U. S. Atty., Salt Lake City, Utah (A. Pratt Kesler, U.S. Atty., Salt Lake City, Utah, H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, David L. Luce, Joseph M. Howard and Dickinson Thatcher, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, George Pappas, has appealed in Number 4809 and appellant, Harry Pappas, has appealed in Number 4810 from judgments of conviction on informations charging them with wilfully and knowingly failing to furnish to the Collector of Internal Revenue information as to partnership assets and liabilities as required under the Internal Revenue Code and Treasury Regulation No. 111 and specifically Schedule I of Partnership Return of Income, in violation of Section 145(a), Internal Revenue Code, 26 U.S.C.A. § 145(a), for the year 1951. Although separate appeals are taken, the questions are identical and reference will be made as though only one appeal was involved.

Appellants' quotation of Section 145 (a) in their brief omits some of the essential parts of that Section. Section 145(a) so far as material requires taxpayers to make a return or declaration, keep records and supply information for the purpose of computation, assessment or collection of any estimated tax and provides that anyone who wilfully fails to pay such estimated tax, or make a return, or keep records, "*or supply such information * * * required by law*

*or regulations"* [1] shall be guilty of an offense.

On April 18, 1952 appellants filed the partnership return required of partners by 26 U.S.C.A. § 187, but did not include in the return the information required by Schedule I. Schedule I was adopted under Treasury Regulation No. 111 and called for beginning and ending balance sheets, showing the partnership assets, liabilities and net worth at the beginning and ending of the year. This schedule was left blank. Repeated efforts on the part of internal revenue agents to obtain this information were unavailing. Finally appellants were informed that criminal prosecution against them had been recommended. Even that failed to elicit the required information. They were given a final date of October 31, 1952, to supply the information. They did not furnish the required information and did not ask for extensions of time. The criminal information was filed April 22, 1953.

The first assignment of error urged for reversal is that the trial court erred in refusing to sustain appellants' motion to dismiss the information and appellants' motion for directed verdicts of acquittal.

■ In support of their contention that the information failed to state an offense, appellants merely cite the case of United States v. Carroll, 345 U.S. 457, 73 S.Ct. 757, 97 L.Ed. 1147, without pointing out in what manner that case is controlling. In that case Treasury Regulations required that, together with the income tax return form 1096, there be filed informational returns on forms 1099, showing payments to every person receiving $600 or more in any calendar year. Defendants were prosecuted for refusing to fill out the informational forms. The Supreme Court held that since the return specified in Section 145 (a) was that provided in form 1096, failure to file 1099 which was not required by statute did not constitute a violation of Section 145(a). But here the basic law, Section 145(a), requires taxpayers to make a return and to supply all information required by the Act or properly promulgated regulations under the Act and makes wilful non-compliance a criminal offense. We think the information stated an offense.

■ Appellants' main contention is that the evidence did not establish wilfulness or evil intent and that the court, therefore, erred in not directing a verdict at the conclusion of the Government's case. There is abundant evidence in the record sustaining the finding that appellants wilfully and intentionally failed to furnish the information required by Schedule I.

The record reveals that appellants had in former years consistently withheld such information from their partnership returns and that during those years the Collector of Internal Revenue had attempted, without success, to correct these deficiencies. For the year in question, after having consistently refused to furnish this information, appellants were finally informed that criminal prosecution had been recommended against them and in numerous conferences with the Internal Revenue agents they were given the opportunity to correct their returns by giving the information called for in Schedule I. They were given a final date of October 31, 1952, but still they refused to furnish this information and did not request an extension of time. For nearly six weeks after the criminal cases were filed against them they did nothing. Finally on June 8, 1953, they furnished an amended return. Even then the information was not complete in that the amount of cash was not stated. A few days before trial in October, 1953, this information as to cash was still not given. Since August 11, 1949, the Government had been seeking information from appellants concerning their personal cash and the partnership cash on hand. These earlier efforts were pursuant to an income tax investigation for the years 1942 through 1947.

---

1. Emphasis supplied.

A special agent for the bureau had interrogated appellants regarding their personal cash and partnership cash as of January 1, 1942. Conflicting statements were made from time to time by them as to the amount of cash on hand. George Pappas stated that on January 1, 1942, the partnership had from six to eight thousand dollars cash; that he had substantially no cash on hand January 1, 1942. On August 30, 1949, he said that his personal cash on hand January 1, 1942, was $39,000 and that he carried this money with him to and from work in a size No. 22 paper sack. He had verified a financial statement on February 13, 1942, in which he showed personal cash on hand December 31, 1942, in the amount of $1,198.77.

In August, 1949, a special agent interrogated Harry Pappas with regard to his personal assets and the partnership assets on January 1, 1942. In answer to nearly all questions he said that he could not remember. No information was furnished as to his personal or partnership cash on hand January 1, 1942. On September 27, 1951, he said that on January 1, 1942, he had $80,000 in his home in an iron box. On July 17, 1951, the instant investigation was commenced with regard to appellants' partnership returns for 1949 and 1950. Over a period of ten months, the special agent made twelve contacts with one or both of the appellants or their accountant or representative. Numerous requests were made for the required information and the only response from appellants was that they would think it over. Later they came several times to the special agent's office, saying they knew nothing about balance sheets or how to make them. Since June, 1951, their accountant knew that the amount of appellants' cash on hand was specifically wanted by the Government. He also knew that appellants made a daily cash count and that

the cash count record was kept only from one day to the next and then thrown away. Although he appeared at appellants' place of business twice a week to take care of payroll tax matters, he failed to ask for the balance of cash on hand on December 31, 1951. From the above outline of evidence, the jury was warranted in concluding, as it apparently did, that appellants did wilfully and intentionally for the year in question refuse to furnish the required information. No doubt the jury failed to be impressed with the defense that the appellants were unlearned and did not know how to keep balance sheets. They were keen, alert business men, who successfully operated several prosperous businesses. They had on hand at different times large amounts of cash which they said they carried around in paper sacks and stored in iron strong boxes in their homes. No doubt the jury had difficulty in concluding that they did not know or concern themselves with the status of their business ventures or the amount of cash on hand at the end of each year.

▇▇▇▇ Appellants contend that the court erred in admitting evidence of their refusal to furnish like required evidence during preceding years beginning with 1942. This evidence was offered to establish wilfulness. The general rule is that evidence of former offenses is not admissible to establish an offense charged in the indictment or information.[2] But there are well recognized exceptions to the rule, one of which is that such evidence is competent to prove motive or intent.[3] The only limitation upon such evidence is that it be not too remote in point of time. Here we have a continuous line of alleged similar conduct, extending uninterruptedly over a period of seven or eight years. We think the evidence was properly admitted.

2. Hood v. United States, 10 Cir., 59 F.2d 153; Hodge v. United States, 75 U.S. App.D.C. 332, 126 F.2d 849; Brickey v. United States, 8 Cir., 123 F.2d 341.

3. Burt v. United States, 5 Cir., 139 F.2d 73; Martin v. United States, 75 U.S.App. D.C. 399, 127 F.2d 865; King v. United States, 8 Cir., 144 F.2d 729; United States v. Rossi, 2 Cir., 182 F.2d 292.

Finally it is contended that the trial court erred in its instructions to the jury defining the term "wilfulness." In substance the court told the jury that wilfulness meant "knowingly; you couldn't do a thing wilfully unless you knew it, knew what you were doing." The court told the jury that it implied "Being aware, conscious that there was an obligation to supply it. Failing to supply it intentionally, probably as distinguished from any mistake or inadvertence, and it means doing it with a motive. Sometimes it is a bad or evil motive." The court charged the jury that if it found that failure to furnish the information was done for the purpose of concealing income that that would be a kind of motive.

To sustain their contention that the instruction was erroneous, appellants cite United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, and kindred cases. In the Murdock case the court held that the term "wilful" meant more than carelessness or negligence or inadvertence. The court's instruction under attack here makes it clear that there must be more than carelessness, negligence or inadvertence. We think the court's instruction was adequate to define the elements of the crime under Subsection (a). It would seem clear that one who intentionally refuses to furnish the information required by Schedule I, knowing that it was required, was guilty of wilfully and intentionally withholding such information, as those terms are used under Section 145(a), under which appellants were prosecuted. The case of Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, relied upon is not in point. That case arose under Section 145(b) which makes it a felony to wilfully attempt to evade or defeat a tax. All the court held was that wilfully omitting to make a return and pay a tax defined in Subsection (a) without more did not constitute a violation of Subsection (b), because under Subsection (b) intent to evade the tax was an additional element of the offense to that set out in Subsection (a),

and that before a conviction should be had the facts and circumstances of the wilful acts must be such as to warrant the jury in concluding that it was done with intent to evade the payment of a tax.

The judgments in Numbers 4809 and 4810 are severally affirmed.