Charles H. **RUTHERFORD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15885.

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1959.

As Amended March 17, 1959.

Rehearing Denied and Rehearing En Banc
Denied March 17, 1959.

Certiorari Denied May 25, 1959.
See 79 S.Ct. 1140.

Murray M. Chotiner, Russell E. Parsons, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Rembert T. Brown, Lloyd F. Dunn, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

This is an appeal by appellant from his conviction and $2,500 fine imposed by the United States District Court for the Southern District of California, Central Division, for his willful failure to register and pay a horse race wagering occupational tax as required by Sections 4411 and 4412, Internal Revenue Code, 1954, 26 U.S.C. §§ 4411, 4412, and in violation of Section 7203, Title 26 U.S.C. The case was tried by the Court without a jury upon an Information filed by the United States Attorney, charging in substance

That during the tax year beginning July 1, 1957 and up to and including August 15, 1957, appellant engaged in the business of accepting wagers on horse races and received such wagers within the meaning of Section 4401(c), 26 U.S.C., and that because of such activity appellant was required by Sections 4411 and 4412, Internal Revenue Code, 1954 to register and pay the wagering occupational tax to the Internal Revenue District Director at Los Angeles within the Central Division of the Southern District of California, and that the appellant, well knowing those facts, did willfully and knowingly fail to register and

pay such District Director or any other proper officer of the United States, in violation of Section 7203, Title 26 U.S.C.

The principal contentions of appellant are (1) that the evidence stated in the supporting affidavits was insufficient to show probable cause for issuing the search warrant used to obtain certain seized papers which were later admitted at the trial to prove the charges of the Information against the appellant, and that the motion to suppress that evidence should have been granted, (2) that the evidence was insufficient to support the conviction and sentence of appellant, and (3) that the evidence did not sufficiently establish venue in the Trial Court, where in appropriate proceedings all these contentions were timely raised by appellant, but in each instance the Trial Court ruled adversely to appellant.

Of two other defendants tried with appellant but charged in a separate related case, one was dismissed upon appellee's motion and the other was adjudged not guilty.

On the occasion of the search and seizure of the papers, appellant was seen sitting on a couch stuffing some papers under the seat and a brown paper bag containing a number of papers was on the floor near his feet. By stipulation it was admitted that Deputy Sheriff Seltzer would testify that pieces of paper in the paper bag and those stuffed under the couch cushions contained notations of purported bets on horse races and figures showing totals of wins and losses on those bets.

In conversation with federal agents at that time, appellant said those papers were betting markers received by him from a clerk of Swede's (not otherwise identified by appellant) at the auto park identified in the evidence as a meeting place where appellant was said to have previously received rolls of papers from other named persons. Appellant also then said that he was using those papers to figure wins and losses, that Swede would pick them up nightly about 10 o'clock, that he was getting $150 weekly for his services, and when asked if he

knew he was required to have a wagering (tax) stamp he said he did not need one because he was not a bookmaker.

■ As to appellant's contention (1), at the Trial Court hearing on appellant's motion to suppress the evidence for alleged lack of probable cause for issuing the search warrant, four supporting affidavits were brought into question.

The so-called affidavit for search warrant was made by Federal Special Agent Katayama stating that he " * * * has reason to believe that on the premises known as apartment F, 110 North Burris Road, Compton, California, in the Southern District of California, there is now being concealed certain property, namely betting markers, 'owe sheets', 'scratch' sheets, money, telephones, pencils, record paper, and other equipment and bookmaking paraphernalia, which are being used in violating the Internal Revenue laws pertaining to wagering, Sections 4401, 4411 and 4412, Internal Revenue Code 1954. And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: The affidavits attached hereto are incorporated by reference herein. * * "

So attached were three more affidavits, —one each by Deputy Sheriffs Howard Fowler and Calvin Bublitz and an additional one by Katayama.

Fowler's affidavit so attached stated in substance and effect, among other things, that on August 1, 1957, he observed and heard one of his confidential informants dial a certain telephone number and place a bet on a horse race. Fowler then located the address of the place to which was assigned the number dialed by the informant and observed Howard Lee Cupp, who was acquitted as one of the defendants in the related case tried with this one, leave that place address, and drive to an auto park adjoining Mark's Restaurant at the corner of Long Beach Boulevard and Myrrh Street, Compton, California, and after Cupp waited there about five minutes, the appellant drove to that street corner address in a 1957 Cadillac, license number MLR 406, and

then Cupp passed to appellant a parcel containing white slips of paper and thereupon appellant drove away and while under constant surveillance was trailed to Apartment F, 110 North Burris Avenue, Compton, California, and into that location appellant was observed to carry said parcel of papers;

That on July 26 and 30, and August 5, 1957, Cupp arrived at the same Long Beach Boulevard and Myrrh Street address and passed similar parcels of paper to appellant; that on two of these occasions appellant used a Ford car and on the other occasion he used said Cadillac car; that on each of those occasions appellant after so receiving the papers proceeded to the North Burris Road location in Compton; that on July 27, 1957 Cupp was met at that address by a woman known to affiant as the friend of appellant and who was driving said 1957 Cadillac car and she received from Cupp a similar bundle of papers and proceeded under affiant's surveillance to the same Apartment F, 110 North Burris Road, Compton; that on August 12, 1957, Cupp was observed again giving a parcel of papers to appellant at the same place of their previous meetings, that all of the foregoing meetings occurred about 6 p. m. on the days mentioned; that on August 13, 1957, at the same place about 6:14 p. m., Cupp again passed to appellant a similar parcel of papers; that on the last of such occasions affiant Fowler was accompanied by Agent Katayama and Deputy Sheriff Allen; and, quoting from Fowler's affidavit as to appellant,

"That the Los Angeles County Sheriff's Records Division shows the following previous convictions: 6/9/38—Los Angeles County—gambling, $500 fine; 4/4/46—Los Angeles S/c Dept. 44—Bookmaking, 60 days, Susp.; LACJ—6 mos. probation, $200 fine; SC file No. 106246; 11/28/49—Long Beach—gambling, $25 fine; 1/22/55—Compton— Compton MC 4202—betting, $25 or 10 days, Fine paid;"

In his affidavit, Fowler in part further stated that appellant has a reputation as

a bookmaker, but has not had any arrests other than the ones above mentioned; that the above mentioned white slips of paper stated to have been received by appellant, in affiant Fowler's opinion based on his experience as an officer in the Sheriff Vice Detail, and as one qualified as an expert in State Courts, are professional betting markers of the type generally used by bookmakers.

Bublitz's affidavit so attached to Katayama's warrant supporting affidavit stated in part as follows:

" * * * That on January 23, 1957, a visual check made at 304 South Mayo, Compton, California, disclosed that a two-toned green Ford Automobile was observed in the garage at this location; that this location is known to me to be the home of C. H. Rutherford, who is a notorious bookmaker who has previously been arrested by the Sheriff's Department; that a check of the Department of Motor Vehicles disclosed that C. H. Rutherford owned a 1954 Cadillac automobile at that time; that previous to the meeting in which Mr. Maltby [an informant] was interrogated, he was seen in the company of Mr. Rutherford and subsequently in his 1954 blue Cadillac automobile; that on subsequent occasions the two-toned green Ford automobile described above was observed in the garage at 110 North Burris Avenue, Compton, California; that it bears license No. HCR 483 and is registered to a Monica Kissell, who is known to me by name and reputation as the girlfriend of C. H. Rutherford; that C. H. Rutherford, Charles Hemmet Rutherford, alias Charles Hemmet, is known to the Bureau of Criminal Identification, State of California, FBI No. 456442, CII No. 487690, as a White Male American, 5'10½" tall, brown hair and blue eyes, 150 lbs., age 36 in 1956, with two arrests for bookmaking and three for 'gambling'; that Rutherford's modus operandi consists of operating a 're-lay-back office' operation in which the bettor never has contact with the actual bookie, but can only phone his bets into the telephone spot, in this manner the spot does not call the back-office and the telephone number is thus impossible to trace; that generally a resume and unrelayed wagers are passed to the bookie at some arranged meeting place at the termination of the day's activities; * * * "

Katayama's additional affidavit so attached to his warrant supporting affidavit stated in part as follows:

" * * * that I am a Special Agent, Intelligence Division, Internal Revenue Service, U. S. Treasury Department; that upon being advised on August 7, 1957, that a person known to the Los Angeles County Sheriff's Office as C. H. Rutherford was conducting large-scale bookmaking activities in the county area, an investigation was initiated in cooperation with that office;

"that on August 13, 1957, accompanied by Sheriff's Deputies, Howard Fowler and W. H. Allen a surveillance was placed on a parking lot on the northwest corner of Long Beach Blvd., and Myrrh Street, Compton, California, beginning at 5:15 P.M.; that from our hidden observation post I saw a person, identified by the deputies as Howard Lee Cupp, drive into the parking lot in a two-tone green 1955 Ford Automobile bearing license No. AVB 201, accompanied by an unidentified female and a juvenile male, at approximately 6:07 P.M., and remained in their automobile; that at or about 6:14 P.M., a person identified to me by the deputies as Charles H. Rutherford, drove into the parking lot in a 1957 Cadillac automobile bearing 1957 California License No. MLR 406, and park in the lot immediately to the rear of Cupp's automobile; that Cupp left his car and walked to Rutherford's car and handed through the left front win-

dow opening with his right hand slips of white paper, stated a few words, at which time Rutherford proceeded to drive out of the location, and Cupp left almost immediately after; that approximately 15 minutes later, a visual check made at 110 North Burris Avenue, Compton, California, revealed that Rutherford's automobile was parked on the East side of the street facing north at that location;

"that a check of the files of the District Director of Internal Revenue, Los Angeles, California, disclosed that neither Howard Lee Cupp nor Charles H. Rutherford, or each of them, has purchased a special occupational wagering tax stamp, nor has either of them filed Form 11–C, Excise Tax on Wagers; for the applicable period;

"that based upon previous investigative experience with bookmakers it is my opinion that the slips of paper handed to Rutherford by Cupp are betting markers used by bookmakers; * * * "

Appearing in the Transcript of Record in this case is appellant's "Condensed Narrative Statement of Testimony" in which he states:

"The defendant did not register or pay a wagering occupational tax required of one engaged in the business of accepting and receiving wagers with respect to horse races.

"On several occasions between July 25, 1957 and August 15, 1957, the defendant was seen by Federal agents and Los Angeles County deputy sheriffs driving into an auto park adjoining Mark's Restaurant in Compton at approximately 6:00 P.M. On these occasions he would meet Howard Cupp (a co-defendant adjudged by Judge Westover not guilty of failing to pay a wagering occupational tax in a consolidated trial with the defendant), who approached the defendant's automobile and handed him a rolled up package of papers.

"On some occasions Monica Kissel (a co-defendant with Howard Cupp against whom the charges were dismissed on motion of the United States Attorney) met Howard Cupp at the place designated and received from him a rolled up package of papers.

"On one occasion an unidentified woman met the defendant at the place designated and handed him a package of rolled up papers.

"On August 15, 1957 at approximately 6:00 to 6:15 P.M. the defendant was seen by a deputy sheriff at the same auto park meeting Cupp and a package passing from Cupp to the defendant; shortly thereafter Federal Agent Katayama knocked on the door of Apartment F, 110 North Burris, Compton, California, and said: "Open up. We are federal officers and have a search warrant." After waiting 20 to 25 seconds and receiving no response, the federal agent in the company of deputy sheriffs broke the door down and entered the apartment. He saw the defendant seated on a couch stuffing some papers underneath the seat, and there was a brown paper bag containing a number of papers at his feet. A copy of the search warrant was given to the defendant approximately twenty minutes before leaving the premises.

"It was stipulated that Deputy Sheriff Carl Seltzer would testify that pieces of paper in the brown paper bag and under the cushion of the couch contained notations of purported bets on horse races and figures showing the totalization of wins and losses on the said purported bets.

"All of these papers were seized by the federal agent at the said apartment.

"The handwriting of the purported bets was identified as the handwriting of Howard Cupp, and the handwriting of the totalization figures showing the wins or losses

was identified as the handwriting of the defendant.

"Federal Agents Ness and Katayama held a conversation with the defendant at the said apartment on August 15, 1957 in which they asked him what the papers were and the defendant replied that they were betting markers that he picked up from a clerk of Swede's at the Mark's Restaurant auto park. The defendant was asked what he was doing with them, and he replied that he was just figuring the wins and losses and that Swede would come around about 10:00 o'clock each night and pick them up. The defendant stated he was getting $150.00 a week for his services. When asked if he knew he was required to have a wagering stamp, he said he did not need a stamp because he was not a bookmaker. * * * "

As against appellant's contention (1), we hold that such supporting affidavits were, as found by the Commissioner, sufficient to show probable cause for issuance of the search warrant within the rule of Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (which explains or disapproves former cases relied upon by appellant) and that the Trial Court properly denied the motion to suppress.

■ As to appellant's contention (2), all of the evidence, except the supporting affidavits for the search warrant, received at the Trial Court hearing on appellant's motion to suppress the seized physical evidence was received in evidence also at the later trial on the merits when such seized physical evidence in the form of exhibits was so received, with the further exception that the statement made by Cupp in his own handwriting when he was arrested and certain statements by Cupp in one or more of such exhibits as to the part played by appellant and the relationship between appellant and Cupp in the matters charged against appellant were on appellant's motion stricken out by the Trial Court.

■ There was before the Court a great mass of evidence of repeated transactions of appellant personally receiving from one or more persons at the North Burris apartment in Compton, which apartment was not appellant's residence, and of his making up or using betting markers, scratch sheets and owe sheets and of determining the amounts of wins and losses, thus furnishing indispensable final information to him or his agent for use in final payoffs. There was the stipulation that Officer Seltzer would testify that some of the pieces of paper in the brown paper bag and of those stuffed under the couch seat contained notations of purported horse race bets.

A strong circumstance against appellant's contention that he was merely a bookkeeper and not a bookmaker was that much of that large amount of bookmaking material in evidence as exhibits consisted of owe sheets of the kind appellant said he used to figure the wins and losses and which he said were nightly picked up by "Swede", but those owe sheets, which were among the betting papers seized under the search warrant after appellant was seen stuffing them under the couch seat on which he had been sitting or were in a brown paper bag on the floor near his feet, pertained not to only one racing day, but were the win-loss owe sheets made up and accumulated by appellant over the period of about 18 days of racing from July 29 to August 15, 1957. These obviously had not nightly been picked up by "Swede" as appellant said was done, and as most likely would have been done if appellant had been a mere bookkeeper.

Another significant circumstance against appellant was that, at the same parking lot rendezvous on a number of occasions before his arrest, eye witnesses saw him receive from runners or pick-up men sheets of paper of the kind used by bookmakers and observed that immediately thereafter appellant went to the very same apartment address where he was arrested and where the bookmaking material was seized under the search

warrant. That address was not his home, but was, as we are and apparently the Trial Court beyond a reasonable doubt was convinced, the place where appellant as a principal conducted his own extensive bookmaking business. That conclusion and also the fact that appellant was not a mere bookkeeper, runner or pick-up man find ample support from a fair consideration of all the foregoing evidence.

Although the case was tried by the Court without a jury, it was competent for the Court to consider circumstantial evidence and reasonable inferences to be drawn from all the evidence along with the direct evidence in the case with like effect as if the trier of the facts had been a jury instead of the Court. After fairly and impartially considering all of the direct and circumstantial evidence and the reasonable inferences to be drawn therefrom a fair and impartial jury would, we believe, have been, and the Trial Court was, justified in finding the appellant guilty as charged.

We, therefore, hold that the evidence before the Trial Court was sufficient to support its finding and conviction of guilt and sentence of appellant, and that in doing so that Court committed no reversible error.

Finally, we reject appellant's contention (3) that the evidence does not establish the Trial Court's venue, because most if not all of the above transactions of appellant occurred in Compton, California, and if it were true that there is now in the record no sufficient evidence that Compton is in Los Angeles County which County by statute (28 U.S.C. § 84) is within the Trial Court's venue, still this Court in this case may properly and does take judicial notice of that, namely, that Compton is in that County and is within the Central Division of the Southern District of California. Davis v. United States, 9 Cir., 185 F.2d 938, 943, certiorari denied 340 U.S. 932, 71 S.Ct. 495, 95 L.Ed. 673; Goldstein v. United States, 7 Cir., 256 F. 813; United States v. Anderson, D.C., 60 F.Supp. 649.

The Trial Court's action appealed from in this case is affirmed.