**UNITED STATES of America,
Appellee,**

v.

**Leon A. E. MOLLET, Defendant-
Appellant.**

**No. 311, Docket 26777.**

United States Court of Appeals
Second Circuit.

Argued April 10, 1961.

Decided May 9, 1961.

Walter L. Stratton, New York City (Richard L. Bond and Donald L. Crowley, New York City, on the brief), for defendant-appellant.

Gerald Walpin, Asst. U. S. Atty., S. D.N.Y., New York City (Morton S. Robson, U. S. Atty., and David Klingsberg, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, MEDINA, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

On June 4, 1959, defendant Leon Mollet was indicted on eight counts of willfully attempting to defeat and evade the payment of income taxes withheld from employees' wages, and of his own and his employees' shares of FICA taxes. Each count dealt with a different quarterly period in the years 1953 through 1956, and alleged that defendant attempted to evade payment of a large

part of the taxes owing for each such period "by concealing and by attempting to conceal from the Director of Internal Revenue the nature and extent of his assets and the location thereof, and by refusing to pay said taxes, he having funds with which to pay said taxes." Following a trial before a jury he was convicted on the first four counts, relating to taxes owing for 1953 and 1954, and was acquitted on the last four, relating to taxes owing for 1955 and 1956.

The statutory provisions on which the present prosecution is based, I.R.C.1939, § 2707, and I.R.C.1954, § 7201, prohibit both a willful attempt to evade any "tax" and a willful attempt to evade "the payment thereof." In the present case defendant accurately reported the amount of his liability for each quarterly period, and thus made no attempt to evade any "tax." But, once he had properly reported his tax liability, he engaged in a course of conduct quite clearly designed to evade "the payment thereof." His principal point on this appeal is that he made sufficient disclosure of his assets on his tax returns, and to a government agent, to prevent his being charged with attempted concealment. While these disclosures were proper matters for the jury to weigh in determining his guilt, they were not sufficient, in the light of the other evidence in the case, to exculpate him as a matter of law.

■ There was sufficient evidence to justify the jury in finding that defendant had adequate assets to discharge his tax liability for the years in question; indeed, this fact is not seriously challenged on appeal. Since there was a "want of justification in view of all the financial circumstances of the taxpayer," he was guilty of the misdemeanor of willful nonpayment of taxes. I.R.C. 1939, § 2707(b); I.R.C.1954, § 7203; Spies v. United States, 317 U.S. 492, 498, 63 S.Ct. 364, 87 L.Ed. 418. See Wilson v. United States, 9 Cir., 250 F.2d 312. To constitute the felony of tax evasion, however, the government must show in addition some "affirmative action." Spies v. United States, supra, 317 U.S. 492, 498, 63 S.Ct. 364, 87 L.Ed. 418. The affirmative action relied upon in the present prosecution is the "concealment" of the nature and extent of defendant's assets, particularly certain brokerage accounts in the United States and Canada. We hold that the evidence adduced by the government goes beyond a mere failure by the defendant to reveal the existence of these assets and is sufficient to satisfy the requisite of affirmative conduct.

Thus, when he was approached for payment by Revenue Officer Murray, defendant misrepresented his ability to pay, stating that he did not have the money and that he would have to borrow. Later, in 1957, he orally gave the Assistant Regional Commissioner of Collection a list of his assets, which excluded his brokerage accounts. Throughout the period from 1953 to the date of indictment he made promises to provide a financial statement, but never did so. Though such a statement is not required by law, his repeated promises to provide such a statement appeared in context as an integral part of an attempt to stall the government in its endeavor to collect taxes. Furthermore, when one of the collection officers discovered in 1957 that he had an account with Thomson & McKinnon, a Canadian broker, he closed the account and transferred a portion of the proceeds to a new account with another Canadian broker in his daughter's name. Taken as a whole, the evidence strongly supports the conclusion that he attempted to evade payment of his taxes by misrepresenting and concealing the extent of his assets.

■ The keystone of the defense is the fact that defendant disclosed the existence of his brokerage accounts to Special Agent McGinnis of the Intelligence Division in 1951, while the latter was investigating defendant's personal income tax returns for the years 1945 through 1952. Because of the division of functions within a cumbersome bureaucracy, this information did not come to the attention of the revenue

officers from the Collection Division until April 1957, when Intelligence Agent Lipsky was assigned to the case to investigate possible fraud. From 1953 until then, the revenue officers assigned to collect defendant's delinquency were ignorant of these accounts, and defendant, knowing of this ignorance, encouraged it. Thus, despite the disclosure to McGinnis, the jury was entitled to conclude that defendant, on seeing that the collection officers had not been told of his brokerage accounts, attempted to evade the payment of taxes by concealing the extent of his assets. For similar reasons he was not absolved by the fact that his income tax returns revealed some dealing with brokers, including Thomson & McKinnon, and the ownership of numerous securities.

Defendant's final argument is based on alleged impropriety in the manner in which his tax payments were allocated to satisfy his various delinquencies. Where payment accompanied a return for a current liability, the payment was applied to that liability. Otherwise, the payment was applied to the oldest outstanding liability, except in certain cases where the payment was used to close out a relatively small, but more current, delinquent account. Each quarterly delinquency had a separate account number, and these numbers were placed on the back of his check to indicate the account to which each payment was applied. He argues that these payments were not always allocated in the manner he would have liked. But he failed to make any payment on any of the four quarters for which he was convicted; and he has made no showing that he instructed the Internal Revenue Service to apply any payment to those quarters, or that such an instruction was disobeyed. The jury was thus quite justified in finding that his intent to evade the payment of taxes extended to every quarter for which he was convicted.

We find no abuse of discretion and no prejudice in the denial of defendant's request for a bill of particulars. The information sought either was in his possession or was made available to him at the beginning of trial.

We are deeply indebted to assigned counsel for able and skillful presentation of the case for the defense—a loyal and disinterested public service in the best tradition of our profession.

Judgment affirmed.