**Albert EDWARDS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**S. Frank EDWARDS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 19827, 19828.**

United States Court of Appeals Fifth Circuit.

July 18, 1963.

Dick Lee, Sarasota, Fla., for appellant.

Arnold D. Levine, Asst. U. S. Atty., Joe H. Mount, Edith House, U. S. Atty., Thomas J. Hanlon, III, Sp. Asst. to U. S. Atty., S. D. of Florida, Tampa, Fla., for appellee.

Before RIVES, CAMERON and HAYS,* Circuit Judges.

HAYS, Circuit Judge.

Defendants appeal from judgments of conviction in the United States District Court for the Southern District of Florida, Joseph P. Lieb, J., and a jury, for "willful" failure to pay the special federal tax on persons engaged in the business of accepting wagers. 26 U.S.C. §§

---

* Of the Second Circuit, sitting by designation.

4401, 4411, 4412, 7203. It is conceded that defendants did not pay the tax. There was no proof, however, that defendants were aware of the federal tax and "willfully" refused to pay it. We hold that such proof was indispensable, and accordingly reverse both convictions and direct that the informations be dismissed.

It is unnecessary to review the evidence. Suffice it to say that there was ample proof from which the jury could conclude that defendants were engaged in the gambling business.

Appellants were convicted under § 7203 of the Code (26 U.S.C. § 7203) which section provides:

"Any person required under this title to pay any estimated tax or tax * * * who *willfully* fails to pay such estimated tax or tax * * * shall, in addition to other penalties provided by law, be guilty of a misdemeanor * * *." (emphasis supplied).

The government argues that ignorance of the law is no excuse and that evidence that defendants engaged in gambling as a business, together with the concession that they did not pay the required tax, is sufficient to support a conviction.

But this court has long held that, where the statutory definition of the crime of failure to pay a tax includes the element of willfulness, "a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence." Hargrove v. United States, 67 F.2d 820, 90 A.L.R. 1276 (5th Cir. 1933).

In Yarborough v. United States, 230 F.2d 56, 61 (4th Cir.), cert. denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956), the Court of Appeals for the Fourth Circuit, citing the Hargrove case and United States v. Murdock, infra, said:

"Ignorance of the law is no defense to crime, except that, where wilfulness is an element of the crime, ignorance of a duty imposed by law may negative wilfulness in failure to perform the duty."

In United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933) the defendant was convicted of a misdemeanor [1] under the predecessor statute to 26 U.S.C. § 7203 for refusal to answer certain questions put by revenue agents. Defendant maintained that his refusal to answer was based upon fear of prosecution under state law. The Court, reversing the conviction in reliance upon Felton v. United States, 96 U.S. 699, 24 L.Ed. 875 (1877) found error in the charge regarding the element of willfulness:

"Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct. And the requirement that the omission in these instances, must be willful, to be criminal, is persuasive that the same element is essential to the offense of failing to supply information.

\* \* \* \* \* \*

1. The law is settled that in a *felony* prosecution for "willful" attempt to "evade or defeat any tax", 26 U.S.C. § 7201, or conspiracy to violate that section, the evidence must show that the defendant knew of the tax, and took some "affirmative action" (such as acts of concealment), with a "bad purpose" to prevent the government from collecting its revenue. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943); Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); United State v. Shaffer, 291 F.2d 689 (7th Cir.), cert. denied, 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961); United States v. Mollet, 290 F.2d 273 (2d Cir. 1961); Wardlaw v. United States, 203 F.2d 884 (5th Cir. 1953); United States v. Martell, 199 F.2d 670 (3d Cir. 1952), cert. denied, 345 U.S. 917, 73 S.Ct. 728, 97 L. Ed. 1350 (1953).

"The respondent's refusal to answer was intentional and without legal justification, but the jury might nevertheless find that it was not prompted by bad faith or evil intent, which the statute makes an element of the offense."

290 U.S. at 396–98, 54 S.Ct. at 226.

Subsequent cases involving failure to report or pay taxes have closely followed the rule in Murdock. See, e. g., Barrett v. United States, 296 F.2d 309 (5th Cir. 1961); United States v. Palmero, 259 F.2d 872 (3d Cir. 1958) ("mere laxity, careless disregard of the duty imposed by law, or even gross negligence, unattended by 'evil motive' are not probative of 'willfulness' "); United States v. Cirillo, 251 F.2d 638 (3d Cir. 1957), cert. denied, 356 U.S. 949, 78 S.Ct. 914, 2 L.Ed. 2d 843 (1958) ("['willfulness' requires] knowledge of the legal obligation"); Ripperger v. United States, 248 F.2d 944 (4th Cir. 1957), cert. denied, 355 U.S. 940, 78 S.Ct. 428, 2 L.Ed.2d 421 (1958); United States v. Litman, 246 F.2d 206 (3d Cir.), cert. denied, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957) (the omission must be "advertent" and motivated by "bad purpose"); Yarborough v. United States, 230 F.2d 56 (4th Cir.), cert. denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956); Pappas v. United States, 216 F.2d 515 (10th Cir. 1954);

10 Mertens, Law of Federal Income Taxation § 55A.09 (1958).

While the cases we have cited were concerned with taxes other than the gambling tax, we can conceive of no reason why the same rule should not apply to failure to comply with the gambling tax provisions. The legislative history of the gambling tax reveals no intention to impose a stricter standard in gambling cases than in other tax cases. See H. Rep. 586, 82d Cong., 1st Sess. (1951), reproduced 2 U.S.Code Cong. & Admin. Serv. 1781, at 1837–44 (1951); S.Rep. 781, 82d Cong., 1st Sess. (1951), reproduced 2 U.S.Code Cong. & Admin. Serv. 1969, at 2089–96 (1951).

United States v. Simon, 241 F.2d 308 (7th Cir. 1957) involved failure to pay the gambling tax. The court in construing § 7203 quoted extensively from a number of gambling tax cases which required a showing of knowledge of the statute violated, and then held:

"Defendant had knowledge of the law and intentionally refused to comply. There is no proof that such refusal was in good faith."

241 F.2d at 312.[2]

We conclude that since the government wholly failed to prove an essential element of the crimes charged, the convictions must be reversed and the informations dismissed.[3]

**2.** In other cases arising under these statutes, where the issue of willfulness was not raised, there was evidence that the defendant knew of the requirements. United States v. Shaffer, 291 F.2d 689 (7th Cir.), cert. denied, 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961) (one of defendants had registered, served as front for others); Rutherford v. United States, 264 F.2d 180 (9th Cir.), cert. denied, 359 U.S. 1003, 79 S.Ct. 1140, 3 L.Ed.2d 1021 (1959) (asked if he knew of the requirements, defendant replied that they were inapplicable because he was not a bookmaker); Brown v. United States, 249 F.2d 306 (5th Cir. 1957), cert. denied, 356 U.S. 924, 78 S.Ct. 710, 2 L.Ed.2d 719 (1958) (defendant had complied in prior years); Contreras v. United States, 213 F.2d 96, 99 (5th Cir. 1954) (defendant had been warned to pay the tax but failed to do so).

**3.** We may assume, without deciding, that in cases involving nonpayment of *income tax*, e. g. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943); Wardlaw v. United States, 203 F.2d 884 (5th Cir. 1953), the almost universal knowledge of the existence of that tax would justify placing the initial burden of proof of ignorance on the defendant. Cf. Abdul v. United States, 254 F.2d 292 (9th Cir. 1958) and 278 F.2d 234 (9th Cir. 1960), cert. denied, 364 U.S. 832, 81 S.Ct. 44, 5 L.Ed.2d 58 (1960) (two justices dissenting) (withholding tax). There is absolutely no evidence, however, to support our dissenting colleague's basic premise that the federal gambling tax is equally well known, nor may we take judicial notice of such a dubious proposition. IX Wigmore Evi-

Reversed and informations dismissed.

CAMERON, Circuit Judge (Specially Concurring).

I concur fully in the able opinion of Judge Hays and would add the following comments.

It cannot be mentioned too often that prosecutions such as these which we are reviewing are prosecutions for the violation of federal taxing laws, not for the violation of gambling laws. And, "in construing [the statutes] we would not be justified in resorting to collateral motives or effects [a congressional desire to suppress wagering] which, standing apart from the federal taxing power, might place the constitutionality of the statute in doubt." United States v. Calamaro, 1957, 354 U.S. 351, 358, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394. In short, whether one gambles or not is of no concern to the federal government, except insofar as the taxing power alone is involved.

Judge Rives suggests in his dissent that to require affirmative proof that the defendants are aware of the taxing requirements will make convictions exceedingly rare. Besides the fact that we do not hold here that positive, affirmative proof is required, if that be the result, so be it. Such a possibility does not warrant, in my opinion, the suggestion in the dissent that we take judicial notice of the fact that all persons engaged in the gambling business are aware of the requirements. In dealing with this serious business of taking citizens' liberties, we are not privileged to assume that the "tax is so well known as to be one of the most frequent subjects of conversation among professional gamblers." The fact is that I doubt exceedingly if it is true that all "professional" gamblers know of the tax. Nor does such a possibility warrant a holding that defendants affirmatively establish ignorance of the requirements. To do so would certainly put the burden of proving innocence on the de-

fendants, a result which is clearly unconstitutional. Moreover, taking judicial notice of defendants' knowledge would in effect be to convert the crime charged to imprisonment for debt to the government, rather than for evasion of tax liabilities.

As Judge Rives states in his dissent, the issue of the correctness of the charge including in part: " * * * The presumption is that every person knows what the law forbids and what the law requires to be done * * * " is not before us. But necessarily before us is the old adage so often propounded in criminal cases: "Ignorance of the laws is no excuse."

This case is really not an exception to that general rule. Ignorance of the criminality of evading taxes is no excuse, if one wilfully evades the tax, thus committing the crime. One must know, however, of the positive requirements of the federal law that one must register and pay the tax before he can wilfully evade it. It may be that this is the difference between sins of commission and sins of omission. It is a part of our legal heritage, however, that courts of law traditionally mete out punishment for sins of commission. Judgments on sins of omission are usually reserved for a Higher Court sitting at a later Day.

RIVES, Circuit Judge (dissenting).

As the Court says, "there was ample proof from which the jury could conclude that defendants were engaged in the gambling business." Neither of them had registered for or paid the tax as required by 26 U.S.C.A. § 4411 and § 4412. The Court holds, however, that, as a matter of law, there was insufficient evidence to prove that the defendants' failure to register for and pay the tax was "willful" in the sense of the statute making such failure a misdemeanor, 26 U.S.C.A. § 7203. As I understand the opinion, the Court in effect holds that the Government must affirmatively prove as a part of its

dence § 2571 (1940). Defendants' knowledge of the tax, like all other elements of

the crime, was therefore to be proved by the government.

case "that defendants were aware of the federal tax," that they knew of the duty imposed by law.

The gambling business in which the defendants were engaged consisted of a lottery or bolita operation of considerable scope conducted from a house admittedly owned by Frank Edwards. A search of the house under a search warrant disclosed the paraphernalia used in lottery or bolita operations; viz., memo pads, adding machine tapes, tally sheets or recap sheets of sellers or pickup men, cards used to notify buyers of the winning number, two short wave radios, and a telephone listed in the name of Frank Edwards.

A qualified expert on bolita and lottery operations testified to the necessity of keeping on hand a large amount of cash. When Frank Edwards was arrested at the Green Palace Bar in front of the house from which the lottery was conducted, he had in his pocket $71.47 and in a bag on his person $1,091.47. There was considerable testimony about a five-gallon can which Frank Edwards had on occasions carried. The can filled with various lottery paraphernalia was found under the house next door to that from which the operations were conducted. Frank Edwards had been observed meeting various Negroes in the parking lot by the Green Palace Bar and accepting packages from them; he had been observed going in and out of the house where the lottery was conducted.

Two paid informers had purchased lottery or bolita tickets from Albert Edwards in the Green Palace Bar. The bolita tickets which they purchased were introduced in evidence. They had also seen other persons making similar purchases from Albert Edwards.

At the time of his arrest, Frank Edwards admitted ownership of the house, and the officer testified: "I asked him who lived in the house, and he said he rented it out, but he refused to tell me who it was." Upon the trial, Frank Edwards took the stand and testified that he had rented the house to Mahalia Seabrook and Johnny Simpson, and produced a claimed written lease which was introduced in evidence. He admitted having a telephone in the house. He denied being in the lottery or bolita business. On cross-examination, he further testified:

"Q. Is it your testimony here today that you have never engaged in the bolita business?

"A. That's right.

"Q. Ever; is that correct?

"A. (No response)

"Q. Is that your testimony today, Mr. Edwards?

"A. I am trying to think back.

"Q. You are under oath, and I want you to take your time and reflect.

"A. Yes. Back in '49, I think it was.

"Q. You were in the bolita business?

"A. I got arrested.

"Q. You were here in the Courtroom and heard various witnesses testify that you were delivered sacks of I don't know what. What is your statement with respect to those sacks that they discussed as being delivered to you by various people?

"A. My statement is that I didn't receive any sacks from no one."

Albert Edwards also testified upon the trial. He was the son of Frank Edwards. He simply denied having made any of the sales of bolita tickets to which the Government witnesses had testified.

It is significant on the present issue that neither defendant testified that he was not aware of the gambling tax or was ignorant of the duty imposed by law.

The foregoing is a brief summary of the evidence which the Court very properly holds to be ample proof from which the jury could conclude that defendants were engaged in the lottery or bolita operation. Frank Edwards fits the description of the "banker" and Albert Edwards that of the "writer" in United States v. Calamaro, 1957, 354 U.S. 351, 353, 77 S.Ct. 1138, 1 L.Ed.2d 1394. If, as the Court now holds, it is necessary,

as a part of the Government's case, to go further and affirmatively prove that the defendants were aware of the tax, that they knew the law; then, I apprehend that convictions for willful failure to pay the gambling tax will become exceedingly rare.

It seems to me that the element of willfulness, including an awareness of the tax or knowledge of the law, may be inferred from the circumstances attending the conduct of the lottery or bolita operation. I understand that to be the effect of the holdings both of this Court and of the Supreme Court in the Ingram case. Ingram v. United States, 5 Cir. 1958, 259 F.2d 886; affirmed in part and reversed in part, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503.

True, this case does not present as large an operation or as much effort to conceal the operations as did Ingram. However, the size of the operation cannot be controlling, and there was in this case some effort at concealment; for example, the attempt to hide behind a fictitious lease, and the placing of the five-gallon can containing lottery paraphernalia under the adjacent house. Certainly the operations were not so brazen and unconcealed as to prevent the defendants from denying in toto any participation in them.

The informations upon which the defendants were tried and convicted charged that they willfully failed both to register with the District Director and to pay the special gambling tax. If they had registered but had simply failed to pay the tax, the case might stand differently, but here they failed to do both. As said in Spies v. United States, 1943, 317 U.S. 492, 497, 498, 63 S.Ct. 364, 367, 368, 87 L.Ed. 418:

> "The difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define. Both must be willful, and willful, as we have said, is a word of many meanings, its construction often being influenced by

its context. United States v. Murdock, 290 U.S. 389, [54 S.Ct. 223, 78 L.Ed. 381]. *It may well mean something more as applied to nonpayment of a tax than when applied to failure to make a return. Mere voluntary and purposeful, as distinguished from accidental, omission to make a timely return might meet the test of willfulness.* But in view of our traditional aversion to imprisonment for debt, we would not without the clearest manifestation of Congressional intent assume that mere knowing and intentional default in payment of a tax, *where there had been no willful failure to disclose the liability,* is intended to constitute a criminal offense of any degree. We would expect willfulness in such a case to include some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer." (Emphasis supplied.)

Holland v. United States, 1954, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150, involved the more serious felony charge of willfully attempting to evade income taxes. Under the caption of "Willfulness Must be Present," the Court said:

> "A final element necessary for conviction is willfulness. The petitioners contend that willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income.' This is a fair statement of the rule. Here, however, there was evidence of a consistent pattern of underreporting large amounts of income, and of the failure on petitioners' part to include all of their income in their books and records. Since, on proper submission, the jury could have found that these acts supported an inference of willfulness, their verdict must stand. Spies v. United States, supra, [317 U.S.] at 499–500, [63 S.Ct. 368]."

It seems to me that proof that the defendants engaged in a gambling *business* also involves "evidence of a consistent pattern," that is, numerous sales and redemptions of lottery or bolita tickets. Indeed, from Frank Edwards' testimony on cross-examination which I have quoted, the jury might well have concluded that he had been engaged in the bolita business as far back as 1949.

With deference to my brothers, it seems to me utterly unrealistic and extremely naive for either the jury or the court to assume that persons engaged in the gambling business are unaware of the federal gambling tax. I have no doubt that that tax is so well known as to be one of the most frequent subjects of conversation among professional gamblers.

So far as I am aware, the present holding is without precedent in its imposition upon the Government of the burden of proving that the defendants knew the law, which was plain, definite and well settled for many years. The situation was different in United States v. Murdock, 1933, 290 U.S. 389, 396, 54 S.Ct. 223, 226, 78 L.Ed. 381:

"It follows that the respondent was entitled to the charge he requested with respect to his good faith and actual belief. *Not until this court pronounced judgment in* United States v. Murdock, 284 U.S. 141, [52 S.Ct. 63, 76 L.Ed. 210], *had it been definitely settled that one under examination in a federal tribunal could not refuse to answer on account of probable incrimination under state law.* The question was involved, but not decided, in Ballman[n] v. Fagin, 200 U.S. 186, 195 [,26 S.Ct. 212, 50 L.Ed. 433], and specifically reserved in [United States ex rel.] Vajtauer v. Comm'r of Immigration, 273 U.S. 103, 113 [,47 S.Ct. 302, 71 L.Ed. 560]. The trial court could not, therefore, properly tell the jury the defendant's assertion of the privilege was so unreasonable and ill founded as to exhibit bad faith and establish

willful wrongdoing. This was the effect of the instructions given. We think the Circuit Court of Appeals correctly upheld the respondent's right to have the question of absence of evil motive submitted to the jury, and we are of opinion that the requested instruction was apt for the purpose." (Emphasis supplied.)

In a case like this where the law is plain, definite and well settled, certainly the defendants must present some evidence of their ignorance of the law before the Government is called on to prove that they were aware of the tax or of their duty under the law. As has been said, while each of the defendants testified, neither of them professed any ignorance of the law. In Cruz v. United States, 10 Cir. 1939, 106 F.2d 828, 830, Judge Phillips said:

"Furthermore, if there was a want of knowledge as to the existence of Section 12 on the part of the defendants, that was a fact peculiarly within their knowledge, and when the government established a prima facie case, the burden of adducing evidence to rebut the presumption of such knowledge rested on the defendants. Blumenthal v. United States, supra [8 Cir. 1937, 88 F.2d 522, 530]; Crapo v. United States, 10 Cir., 100 F.2d 996, 1001, and cases cited in note 4."

Our own case of Wardlaw v. United States, 5 Cir. 1953, 203 F.2d 884, 885, involving the felony charge of attempting to evade income tax, similarly treated the burden of proceeding:

"It is now settled that 'willfully' as used in this offense, means more than intentionally or voluntarily, and includes an evil motive or bad purpose, so that evidence of an actual *bona fide* misconception of the law, such as would negative knowledge of the existence of the obligation, would, if believed by the jury, justify a verdict for the defendant."

Continuing in Wardlaw, we said: "Claimed ignorance, however, could hard-

ly be established so conclusively as to justify a directed verdict."

The present holding is that, without any evidence or indication that the defendants were ignorant of the law or unaware of the federal tax, the district court should have entered a judgment of acquittal. The district court did submit the issue of willfulness, as follows:

"Now, you will note that the omission or failure to act charged in the information is alleged to have been willfully done. A failure to act is willfully done if done voluntarily and purposely and with a specific intent to fail to do what the law requires to be done. That is to say, with that purpose either to disobey or disregard the law.

"It is not necessary for the prosecution to prove knowledge of the accused that a particular act or failure to act is a violation of law unless and until outweighed by evidence to the contrary. The presumption is that every person knows what the law forbids and what the law requires to be done.

"However, evidence if any that the accused acted or failed to act because of ignorance of the law is to be considered in determining whether or not the accused acted or failed to act with specific intent as alleged."

To this charge defendants' counsel announced that he had no objection. Hence, its correctness *vel non* is not an issue on appeal. In dissenting, however, I may say that the district court's charge is an admirable statement of the law as I understand it.

Certainly, I submit, the majority goes too far in ordering the informations dismissed. The appellants' brief goes no further than to "submit that the Trial Judgment should be reversed and a new trial granted." That is permissible under Bryan v. United States, 1950, 338 U.S. 552, 560, 70 S.Ct. 317, 94 L.Ed. 335, and is the extreme length to which this Court should go under any view.

I respectfully dissent.