UNITED STATES of America,
Appellee,

v.

Robert Ronald BOUCHER, Appellant.

No. 74–1533.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1974.

Decided Jan. 23, 1975.

Larry B. Leventhal, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Robert Ronald Boucher appeals from his conviction after a court trial of knowingly refusing to register with the Selective Service System in violation of 50 U.S.C. App. § 462(a).[1] Boucher argues that (1) the Government failed to prove a "knowing" violation as required by the statute, and (2) the Government engaged in discriminatory selective prosecution in violation of his fifth amendment rights. We reverse on the first issue and do not reach the second.

At trial, the Government established that Boucher registered with the Selective Service System on July 16, 1973, approximately eight and one-half months after his 18th birthday or about seven and one-half months beyond the 30-day grace period allowed by law to register after an individual's 18th birthday.[2] The Government presented evidence of the existence of a public relations program informing young men of the requirement of registration during the time period relevant to this case. This ongoing program included press releases to the media and posters displayed throughout Minnesota. The Government's only witness, Major John Abrahamson, Deputy Director of the Selective Service System for Minnesota, testified, however, that he could specifically recall only one article on the subject of registration actually appearing in a newspaper. He further testified that he knew of only one poster in defendant's hometown, Robbinsdale, Minnesota, and such poster was located in the second floor office of the Local Board of the Selective Service. The prosecution presented no direct evidence that Boucher had actual knowledge of the registration requirement prior to the time of his registration nor any background information relating to the defendant that might aid a factfinder in inferring that Boucher became aware of the obligation to register prior to the date of his actual registration.

The district court determined that evidence of publicity of the requirement of registration for the draft was sufficient to establish the probability of defendant's knowledge of his obligation to register and satisfied the Government's obligation to prove a "knowing" violation.

We disagree. In a recent similar prosecution, United States v. Klotz, 500 F.2d 580 (8th Cir.), rehearing denied, 503 F.2d 1056 (8th Cir. 1974), we reversed the conviction of a defendant who had not registered for the draft until two years after his 18th birthday because the determination of defendant's intent "rested on a presumption, and not on proof of the essential fact of knowledge necessary to sustain the conviction." 500 F.2d at 582. In Klotz, as here, the Government relied on publicity of the draft registration requirement to prove knowledge on the part of the defendant. The facts present in Klotz are substantially identical to those shown in this case. Our holding in Klotz would thus appear to require a reversal here. However, the Government maintains that a special provision of the Selective Service Act, 50 U.S.C. App. § 465(a), requires a different

1. That section provides that any person who knowingly "evades or refuses registration or service in the armed forces * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *." [50 U.S.C. App. § 462(a).]

2. 50 U.S.C. App. § 453 requires all males between the ages of 18 and 26 to be registered with the Selective Service. 32 C.F.R. § 1611.1(b)(1) (1974) grants the 30-day grace period. That regulation reads:

Citizens of the United States shall present themselves for registration on the day they attain the 18th anniversary of the day of their birth or within a period of 60 days commencing 30 days before such date * * *.

result in the instant case. That section reads:

(a) Every person shall be deemed to have notice of the requirements of this title * * * upon publication by the President of a proclamation or other public notice fixing a time for any registration under section 3 [Section 453 * * * ].

The prosecution contends that this section relieves it of the duty of presenting any evidence relative to a defendant's knowledge of the registration requirement in a prosecution for failure to timely register for the draft. The Government presented this issue to the court on a petition for rehearing in *Klotz*. Because the Government had not argued or relied on this statute at the *Klotz* trial or on that appeal, we considered the issue as untimely presented and denied the rehearing. United States v. Klotz, 503 F.2d 1056 (8th Cir. 1974). In the instant case, however, this contention is properly before us for our consideration.

■ The prosecution, citing Kaohelaulii v. United States, 389 F.2d 495 (9th Cir. 1968), and Silverman v. United States, 220 F.2d 36 (8th Cir. 1955), concedes that "willfulness or guilty knowledge is an element of the offense" of failure to register. The Government argues that § 465(a) imposes upon the defendant a presumption that he knew of his obligation to timely register for the draft and, therefore, shifts to the defendant the burden of proving lack of knowledge. The Government cites no cases or statutory history supportive of this contention. Nor does it cite any authority for its assumption that § 465(a) applies to a criminal prosecution under § 462(a).

■■ In analyzing the Government's position, we think it well to note that the legislature as well as the courts can establish rules of evidence to apply in a criminal case. Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). Ordinarily, in creating a rule of evidence as part of the federal criminal law, Congress incorporates that rule of evidence in the same section of the criminal statute that defines the substantive crime. *See, e. g.,* Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). Thus, for example, in *Tot*, the Court was called upon to interpret § 2(f) of the former Federal Firearms Act, 15 U.S.C. § 902, which made it unlawful for any person convicted of a crime of violence to receive any firearm which had been shipped or transported in interstate commerce. Section 2(f) further provided that the possession of a firearm by a felon should be "presumptive evidence" that the firearm had been shipped or transported or received by such person in violation of the Act. In a similar vein, the Court in *Gainey* and *Romano* considered 26 U.S.C. § 5601, which declares unlawful the operation of an unregistered still and distilling apparatus. This section of the statute specifically provides that in any prosecution for possession of an unregistered still, the "presence of the defendant [at the site of the still] shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury * * *." [26 U.S.C. § 5601(b)(1).] *Leary* and *Turner* deal with narcotics statutes containing a presumption in a format similar to the statutes referred to in the above cited cases.

■ Sections 462(a) and 465(a) are parts of the Military Selective Service Act, 50 U.S.C. App. § 451 et seq. Criminal sanctions for all violations of the Act are found in § 462, but § 462 does not contain language creating any presumption. The language of § 465(a), although reciting that every person is "deemed" to have notice of the requirements of Selective Service laws, contains no refer-

ence to the offense and penalties section, § 462. The Government does not offer any justification for its view that non-specific language of a noncriminal section (§ 465) of a statute can change the rules of evidence applicable to a criminal charge arising under a completely different section (§ 462) of the statute. It is more logical to read § 465(a) in conjunction with 50 U.S.C. App. § 453, which creates a citizen's obligation to register for the draft.[3] Together these two sections create the legal duty for every male between the ages of 18 and 26 to register for the draft in accordance with the proclamation of the President and regulations promulgated pursuant to § 453. The failure to comply with that duty, however, does not necessarily make the individual guilty of a crime in the absence of proof of a knowing failure to register as that proof is required by § 462.

Arguing that the statute in question adopts the well-recognized general rule that a person is presumed to know the law, the Government cites Edwards v. United States, 334 F.2d 360 (5th Cir. 1964) (en banc), in support of its view that the conviction should be sustained. In Edwards the defendants engaged in the gambling business through the operation of lotteries. The Government prosecuted the defendants for willfully failing to register for and pay the gambling tax as required by federal law. The prosecution offered no direct evidence of the defendants' state of mind, but did offer evidence that one of the defendants had considerable experience in the lottery business and that the defendants had tried to conceal their operations. The court concluded that this circumstantial evidence was sufficient to allow the jury to infer that the defendants were aware of their obligations to pay a wagering tax. Id. at 364–365.

The second question in Edwards was whether the trial court erroneously instructed the jury in terms of a presumption of knowledge, rather than an inference of knowledge. In the context of the case, the court found no error of the trial court in instructing the jury in terms of a presumption since the law was "plain, definite, and well settled, and any want of knowledge of its requirements [was] a fact resting peculiarly within the knowledge of the defendants * * *." Id. at 367.

Edwards holds that the Government may prove willfulness or knowledge by circumstantial evidence relating to a defendant's conduct or activities. But the facts in Edwards present an entirely different situation than the facts now before us. Here, we have no evidence whatsoever bearing upon Boucher's conduct or activities in the months preceding his 18th birthday or for the next several months until his actual registration. No facts exist upon which to draw any inference that Boucher knew of his obligation to register during this period and his actual registration does not give rise to an inference that he knew of the duty to register during the preceding months. We conclude that the decision in the Edwards case offers no assistance to the Government's position here.

■ The record here indicates some doubt as to the validity of the Government's proposition that in late 1972 and early 1973 most young men knew of their duty to timely register for the draft. The defendant introduced into evidence several pages of the Selective Service classification records for men with a birth year of 1954, the defendant's birth year. These records list the names and dates of birth and registration of 76 men born in 1954 who registered with the defendant's local Selective

3. Section 453 reads as follows:
　　Except as otherwise provided in this title * * *, it shall be the duty of every male citizen of the United States, and every other male person now or hereafter in the United States, who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder.

Service Board between March 1973 and April 1974. All of these men registered late (*i. e.*, more than 30 days beyond their 18th birthday) and 47 registered as late or later than the defendant. Indeed, in his testimony, the Deputy Director of the Selective Service for Minnesota, Major Abrahamson, conceded that during late 1972 and early 1973, some 18-year olds were confused about registration requirements.

Under the circumstances shown here, a rational connection does not necessarily exist between the fact proved (failure to register) and the ultimate fact sought to be proved (that this failure was intentional). *Cf.* Tot v. United States, *supra,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519, and Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

We do not say that Congress under appropriate circumstances might not enact criminal penalties for the mere failure of a citizen to register for the draft without requiring proof of intent. Suffice it to say, we find no such congressional determination in the enactment of § 465(a).

Accordingly, consistent with United States v. Klotz, *supra,* 500 F.2d 580, we reverse this conviction.

Reversed.

ROSS, Circuit Judge (dissenting).

I would affirm the judgment of the trial court on the basis of Judge Larson's well reasoned opinion. He found that the government had, by means of circumstantial evidence, established a knowing violation of § 462(a), citing the district court's opinion United States v. Klotz, No. 4–73–Criminal 130 (D.Minn., Nov. 7, 1973) in which Judge Neville said:

> The government was able to show the general publicity given to registration requirements through the media and by the posting [of] bulletins and disseminating information through the high schools. It does not strain this court's thinking to find beyond a reasonable doubt that defendant knew as

have all competent 18 year olds of the requirement to register for the draft on reaching his 18th birthday.

I recognize that this Court reversed Judge Neville's holding in United States v. Klotz, 500 F.2d 580 (8th Cir.), rehearing denied, 503 F.2d 1056 (8th Cir. 1974). I voted for a rehearing in that case because I felt it was erroneously decided by the panel. I still believe it to be an incorrect decision. In *Klotz,* as in this case, there was sufficient circumstantial evidence to show defendant's knowledge of the duty to register upon reaching his 18th birthday.

The government might have presented a stronger circumstantial case by producing evidence that the Selective Service's ongoing public relations program had actually reached into the defendant's community or school. However, on appeal our role is not to reverse the determination of the trier of fact merely because the government's case was weaker than it might have been. Rather, we must ascertain whether the evidence was sufficient when viewed in the light most favorable to the guilty verdict. United States v. Gaskill, 491 F.2d 981, 982 (8th Cir. 1974). When viewed in this light, it is clear that the evidence of the general state-wide public relations program is sufficient to support Judge Larson's inference that Boucher must have known of the registration requirement.

Additionally, one cannot logically ignore the obvious fact that Boucher became 18 shortly before the end of the fighting in Vietnam and did not register until several months after the end of the war and after the announcement that there would be no more inductions under the Selective Service Act.

This Court, in determining *Klotz* and this case, has made it extremely difficult for the government to show the requisite intent in failure to register cases. While this may not be critical at this time, it will become very important if and when it becomes necessary to resume inductions under the Selective Service laws.