853 F.2d 1359
 Vernon BARKSDALE, individually and as Personal
Representative of the Estate of Edmond Barksdale,
Deceased, Plaintiff-Appellant,
v.
Dr. Myron EMERICK and Dr. Karl Emerick, individually and in
their capacities as medical doctors for the Macomb County
Jail; Donald Amboyer, individually and in his
representative capacity as Jail Administrator for the Macomb
County Jail; William Hackel, individually and in his
representative capacity as Sheriff for the County of Macomb;
the County of Macomb, a governmental entity of the State of
Michigan; and Mary Jones and Shirley Bels, individually and
in their representative capacities as Medical Corrections
Officers, jointly and severally, Defendants-Appellees.
 No. 87-1181.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 25, 1988.
Decided Aug. 12, 1988.
 
 Mark Granzotto (argued), Detroit, Mich., James M. Prahler, Bloom, Prahler & Kavanaugh, Livonia, Mich., for plaintiff-appellant.
 Christine D. Oldani (argued), Fred Brochert, Brian J. Doren, James G. Gross (argued), Detroit, Mich., for defendants-appellees.
 Before MERRITT and KENNEDY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff appeals from the District Court's order of dismissal, order denying appellant's motion for rehearing or reconsideration, and order denying appellant's motion to disqualify. Because the District Court failed to comply with procedural rules concerning disqualification, we vacate the judgment and remand this case for further proceedings.
 
 
 2
 From February 1983 through June 1983, twenty-year-old Edmond Barksdale was a periodic resident of the Macomb County Jail. During this time, he suffered from steroid dependent bronchial asthma, characterized by numerous attacks of bilateral inhalatory and expiratory wheezing, labored expiration, congestion, and difficulty in breathing.
 
 
 3
 On June 20 and 21, 1983, while in the care and custody of appellees, Edmond Barksdale suffered a severe asthma attack, exhibited by an inability to breathe, coughing fits, wheezing fits, and congestion. Although he requested emergency medical care, including immediate hospitalization and treatment from a pulmonary specialist, his request was denied. Instead, Mr. Barksdale was removed from his cell and placed into an observation cell, commonly called the "bull pen."
 
 
 4
 Edmond Barksdale was in the "bull pen" again on June 22, 1983, when he was observed by appellee Jail Administrator Donald Amboyer. Later that day, Edmond Barksdale was transported to Macomb County General Hospital where he underwent emergency life-saving procedures. These procedures proved futile. Mr. Barksdale lapsed into a coma, and he died on June 29, 1983, as the result of status asthmaticus.
 
 
 5
 On March 1, 1985, appellant filed a four count complaint: count one contains 42 U.S.C. Sec. 1983 Eighth Amendment claim alleging deliberate indifference to serious medical needs; counts two through four contain pendent state law claims sounding in tort and contract.
 
 
 6
 In November and December, 1986, defendants filed motions to dismiss and for summary judgment based on several asserted grounds. On January 26, 1987, the District Court entered a memorandum opinion and order granting the motion for summary judgment because (1) the "policy or custom" requirement of Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), was not satisfied, (2) "no individual involvement" of certain appellees had been demonstrated, and (3) "uncontradicted evidence [of] the presence of extensive medical treatment" indicated that "no material Eighth Amendment claim is present." The District Court then dismissed the state law claims as a matter of discretion under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). On that same day, the District Court entered judgment of dismissal for all defendants on all counts. Thereafter, on February 5, 1987, appellant filed a motion for recusal pursuant to 28 U.S.C. Sec. 455(a) and a motion for rehearing or reconsideration. The District Court denied these motions on February 10, 1987.
 
 
 7
 On appeal, plaintiff argues both that the District Judge should have recused himself and that a portion of the summary judgment entered was both procedurally improper as a sua sponte grant without notice and also wrong on the merits. Due to our disposition of the recusal issue, we do not reach the summary judgment questions on this appeal.
 
 28 U.S.C. Sec. 455(a) provides:
 
 8
 Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 
 
 9
 The legislative history of the 1974 amendments to section 455 explains subsection (a) as follows:
 
 
 10
 Subsection (a) of the amended section 455 contains the general, or catch-all, provision that a judge shall disqualify himself in any proceeding in which "his impartiality might reasonably be questioned." This sets up an objective standard, rather than the subjective standard set forth in the existing statute through use of the phrase "in his opinion". This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case. The language also has the effect of removing the so-called "duty to sit" which has become a gloss on the existing statute. See Edwards v. United States, [334 F.2d 360 (5th Cir.1964) ]. Under the interpretation set forth in the Edwards case, a judge, faced with a close question on disqualification, was urged to resolve the issue in favor of a "duty to sit". Such a concept has been criticized by legal writers and witnesses at the hearings were unanimously of the opinion that elimination of this "duty to sit" would enhance public confidence in the impartiality of the judicial system.
 
 
 11
 While the proposed legislation would remove the "duty to sit" concept of present law, a cautionary note is in order. No judge, of course, has a duty to sit where his impartiality might be reasonably questioned. However, the new test should not be used by judges to avoid sitting on difficult or controversial cases.
 
 
 12
 At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.
 
 
 13
 Finally, while the proposed legislation would adopt an objective test, it is not designed to alter the standard of appellate review on disqualification issues. The issue of disqualification is a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion.
 
 
 14
 H.R.Rep. No. 1453, 93d Cong.2d Sess. 4-5, reprinted in 1974 U.S.Code Cong. & Admin.News 6351, 6354-55 (emphasis original).
 
 
 15
 In the instant case, appellant filed a motion for recusal on February 5, 1987, ten days after the entry of dismissal. The motion recited that the District Judge had "previously acknowledged that it is personally acquainted with" two defendants, Hackel and Amboyer, and that within "the last week, Plaintiff's counsel has learned that the son of [Sheriff Hackel] is a law clerk to this Court."[1] The District Court's order denying the motion for recusal reads in full:
 
 
 16
 The Court having disclosed to counsel that one of its law clerks was related to a Defendant party herein at the July 8, 1986 status conference and counsel having voiced no objections and the Court further having insured that the subject clerk was to have no contact whatsoever with this matter, Plaintiff's belated Motion to Disqualify is DENIED.
 
 Section 455(e) provides in pertinent part:
 
 17
 Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.
 
 
 18
 (Emphasis added.) There is no disclosure "on the record" and therefore no properly obtained "waiver." It is obvious that the District Court did not comply with this subsection's disclosure and waiver requirements, which its plain language, legislative history, and the case law tell us must be strictly construed. See, e.g., United States v. Murphy, 768 F.2d 1518, 1538-39 (7th Cir.1985), cert. denied, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986); Portashnick v. Port City Construction Co., 609 F.2d 1101, 1114-15 (5th Cir.) (dicta), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). Our holding is confined to the waiver issue. Lacking a full record, or appropriate findings and conclusions, we express no opinion on the necessity for recusal of the District Court under Sec. 455(a).
 
 
 19
 Our view of the procedure to be followed in dealing with issues under Sec. 455 is reinforced by the Supreme Court's recent decision in Liljeberg v. Health Services Acquisition Corp., --- U.S. ---- 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), applying Sec. 455 strictly and holding that Sec. 455 should "in proper cases, be applied retroactively" in order "to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary." Id. at ----, 108 S.Ct. at 2203. The fact that one of the members of the judge's small staff in chambers is the son of one of the litigants in a case, although not a per se basis for disqualification, deserves careful consideration. The judge states that he disclosed his acquaintanceship with that litigant, but we have no information regarding its extent. Plaintiff should be given the opportunity to develop a "full ... record of the basis for disqualification" in accordance with Sec. 455(e).
 
 
 20
 We do not agree with the dissent that Sierra Club v. Simkins Industries, Inc., 847 F.2d 1109 (4th Cir.1988) is in point. In Simkins, there were no factual issues remaining to be developed on the recusal question; the facts concerning the trial judge's former membership in the Sierra Club were undisputed. By contrast, here we have a critical factual dispute: exactly what disclosure did the District Judge make to counsel at the pretrial conference--only that he was "personally acquainted" with two defendants in the case, as plaintiff's counsel asserted, or that his law clerk was the son of one of those defendants, as the District Judge later recalled. Lacking a full record on which to decide the Sec. 455(a) and Sec. 455(e) issues, we remand for supplementation and clarification of the record--a step for which there is ample precedent. See Health Services Acquisition Corp. v. Liljeberg, 796 F.2d 796, 798 (5th Cir.1986), aff'd, --- U.S. ----, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).
 
 
 21
 After conducting a hearing in which there is "full disclosure on the record of the basis for disqualification," the Court below should consider the waiver and recusal issues. These issues concerning the propriety of the action of the District Judge in adjudicating the case logically precede the adjudication of the case on the merits. The litigant is entitled to the decision of a judge eligible to preside. Therefore, after properly considering the issues under Sec. 455, and making findings and conclusions thereon, the District Judge below, or if he be recused, another District Judge to whom the case may be transferred, shall reconsider the merits of the case.
 
 
 22
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 23
 The majority in my opinion incorrectly holds that the district court failed to comply with the procedural rules concerning recusal under 28 U.S.C. Sec. 455. Additionally, although I believe that the district court possibly failed to comply with procedural rules concerning summary judgment, the record as a whole read in the light most favorable to appellant in my opinion raises genuine issues of material fact concerning the deliberate indifference of appellees Drs. Myron and Karl Emerick, Mary Jones, and Shirley Bels to the medical needs of decedent Edmond Barksdale. I would affirm the district court's judgment as it relates to the remainder of the appellees but vacate the judgment as it relates to Drs. Myron and Karl Emerick, Mary Jones, and Shirley Bels and remand this case for further proceedings. Accordingly, I dissent.
 
 I.
 
 24
 The majority holds that it is obvious that the district court failed to comply with section 455(e)'s disclosure and waiver requirements. This holding is indisputable. It is, however, also irrelevant to the disposition of the instant case.
 
 
 25
 First, I am not convinced that the district court even purportedly accepted a section 455(e) waiver of grounds for disqualification under section 455(a). Appellant's motion to disqualify and the brief in support of this motion filed after judgment of dismissal was entered in this case, nowhere refer to a purported waiver which did not comply with section 455(e). The district court's order denying appellant's motion for recusal is ambiguous. The order does not refer to acceptance of a waiver and it assures the parties that the disqualified law clerk had no contact with the case. On the other hand, the order begins, "[t]he Court having disclosed to counsel that one of its law clerks was related to a Defendant party herein at the July 8, 1986 status conference and counsel having voiced no objections...." This language could mean either that the district court considered the motion for recusal filed after judgment was entered to be untimely or that the district court had accepted a waiver by implication. The district court's language is simply too ambiguous for me to conclude with any certainty that the district court had accepted a waiver of disqualification from the parties.
 
 
 26
 Second, even if I were to conclude that the district court had accepted a waiver of disqualification from the parties, I would not find reversible error in the district court's denial of appellant's motion to recuse. Section 455(e)'s waiver provision, by its terms, applies only to cases in which a ground for disqualification pursuant to section 455(a) exists. Since this case presents no ground for disqualification under section 455(a), the procedural requirements of section 455(e) are simply irrelevant.
 
 
 27
 Sierra Club v. Simkins Industries, Inc., 847 F.2d 1109 (4th Cir.1988), is similar to the instant case in this respect. In Sierra Club, the district judge informed the litigants in pretrial conference of his prior membership in the Sierra Club. His subsequent offer to recuse himself was not accepted by the appellant's trial counsel. The appellant argued that the district court erred in denying its post-trial motion for recusal, arguing that a reasonable person, knowing reasonably ascertainable facts would doubt the district judge's impartiality, and that the district court erred in failing to make its offer of recusal on the record. The Fourth Circuit held that the district court's impartiality could not fairly be questioned in that case and that the district court did not err in failing to make its offer of recusal on the record. The Fourth Circuit reasoned in relevant part as follows:
 
 
 28
 Subsection 455(e) does provide that acceptance of a litigant's waiver of a Sec. 455(a) offer of recusal must be preceded by a 'full disclosure on the record of the basis for disqualification.' However, Sec. 455(a) by its terms is applicable only when a judge's impartiality 'might reasonably be questioned.' ... [W]e do not think the district judge's impartiality may be reasonably questioned on the basis of the trial judge's brief membership in the Sierra Club over a decade before this case was tried.
 
 
 29
 His disclosure of his prior affiliation with plaintiff was therefore not required under Sec. 455(a). It follows that the on-the-record requirement for acceptance of waivers under Sec. 455(e) is not applicable.
 
 
 30
 Id. at 1118.
 
 
 31
 Similarly, in the instant case I do not think that the district judge's impartiality reasonably may be questioned on the basis of one of his law clerk's relationship with a defendant where the district court has insured that the subject clerk had no contact with the case. In Hunt v. American Bank & Trust Co., 783 F.2d 1011, 1015-16 (11th Cir.1986) (per curiam), the Eleventh Circuit reasoned as follows:
 
 
 32
 A judge is not necessarily forbidden ... to do all that is prohibited to each of his clerks. If a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified. We do not believe that a law clerk's acceptance of future employment with a law firm would cause a reasonable person to doubt the judge's impartiality so long as the clerk refrains from participating in cases involving the firm in question.
 
 
 33
 This reasoning applies with equal force to the instant case. Because the disqualified law clerk refrained from participating in the case, a reasonable person would not doubt the district judge's impartiality. It follows that the on-the-record requirement for acceptance of waivers under section 455(e) is not applicable.
 
 
 34
 The cases cited by the majority do not hold to the contrary. For example, in United States v. Murphy, 768 F.2d 1518, 1539 (7th Cir.1985), cert. denied, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986), the Seventh Circuit stated in dicta that section 455(e) requires waiver on the record, not waiver by implication. The court continued, however, that although it would be difficult to find a waiver on the record in that case because the appellant and his trial counsel did not learn of the ground for the district judge's disqualification before sentencing, the absence of a waiver was not dispositive. Id. The court ultimately rejected the appellant's argument that the district court was required to recuse himself nunc pro tunc, holding that nullification of past proceedings is not an appropriate consequence of a recusal for appearance of impropriety. Id. at 1539-41. Thus, Murphy actually supports my position that the district court did not commit reversible error in denying appellant's motion for recusal filed after judgment of dismissal was entered in this case. Cf., Liljeberg v. Health Servs. Acquisition Corp., --- U.S. ----, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (holding that Federal Rule of Civil Procedure 60(b)(6) relief is available for certain section 455 violations depending upon the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process).
 
 
 35
 The majority's reliance on Liljeberg is also misplaced. Although Liljeberg holds that certain section 455 violations require vacatur under Rule 60(b)(6), its holding is premised upon the existence of a section 455 violation. The majority, however, expresses no opinion on the necessity for recusal under section 455(a) in the instant case. Therefore, Liljeberg is inapposite.
 
 II.
 
 36
 The majority opinion concludes that after reconsidering appellant's motion for recusal, the district court is to reconsider the merits of this case. Appellant raises several arguments on appeal concerning the district court's grant of summary judgment in favor of appellees. Since I am of the opinion that the recusal issue was correctly resolved by the district court in the first instance, I would decide the question of whether summary judgment was appropriate in this case.
 
 
 37
 Among appellant's arguments regarding summary judgment, are both procedural and substantive arguments. I mention the procedural arguments only briefly. Initially, appellant argues that the district court erred in granting summary judgment on the basis of an issue which was never raised by appellees Drs. Myron and Karl Emerick, William Hackel, Donald Amboyer, Mary Jones, and Shirley Bels, i.e., whether the deliberate indifference standard of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), was met. I would reject this argument. A district court may properly grant summary judgment on a ground not raised in the motion, where it is clear there is no genuine issue of material fact. 6 J. Moore, Moore's Federal Practice p 56.14 (1987). Next, appellant argues that the district court improperly sua sponte granted summary judgment, see Yashon v. Gregory, 737 F.2d 547 (6th Cir.1984), in favor of at least six appellees who did not submit motions for summary judgment. I am inclined to accept this argument as it relates to Drs. Myron and Karl Emerick, since their motion for dismissal expressly requested dismissal only of the pendent state law claims, not of the section 1983 claim. See Federal Rule of Civil Procedure 56(b). I would reject this argument as it relates to the remainder of appellees, however, since their motion for partial summary judgment and/or dismissal was not limited to certain claims.
 
 
 38
 More important than any procedural error possibly committed in this case, however, is the district court's substantive error in granting summary judgment in favor of certain appellees. Appellant argues that the district court erroneously granted summary judgment because material facts remain in dispute. With respect to Drs. Myron and Karl Emerick, Mary Jones, and Shirley Bels, I agree.
 
 
 39
 In Byrd v. Wilson, 701 F.2d 592 (6th Cir.1983) (per curiam), this court considered the standard for section 1983 claims of inadequate medical treatment.
 
 
 40
 The Supreme Court has held that both state and federal prisoners have a constitutionally-guaranteed right to a certain degree of medical treatment while incarcerated. [Estelle v. Gamble,] 429 U.S. at 103, 97 S.Ct. at 290. While not every showing of inadequate medical treatment will establish the existence of a constitutional violation, the Eighth Amendment does protect a prisoner from actions amounting to a 'deliberate indifference' to his medical needs. Id., at 104, 97 S.Ct. at 291. When an inmate can establish that prison officials have shown such indifference to his medical needs that it offends 'evolving standards of decency,' a valid constitutional claim has been made.
 
 
 41
 This Circuit has followed Estelle and recognized the propriety of such actions against prison authorities in Westlake v. Lucas, 537 F.2d 857 (6th Cir.1976). In Westlake, the Court held that a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering.
 
 
 42
 Id. at 594-95. In Byrd, although the indifference to the appellant's medical needs existed for only a short period of time, the complaint satisfied the standards articulated in Estelle and Westlake. Id. at 595.
 
 
 43
 In the instant case, a deposition which was filed with the district court indicates that Dr. Myron Emerick responded to Edmond Barksdale's June 12, 1983 request to see a doctor on June 15, 1983. Dr. Karl Emerick reported that on April 21, 1983 he made the following notation concerning Barksdale in his files:
 
 
 44
 Resident does not like being in jail; keeps requesting to be in hospital. When seen by medical officers in cell, has no problem breathing or coughing until he realizes medical officers are watching him; then coughing and wheezing starts.
 
 
 45
 I suspect this resident will make every effort to provoke acute asthma attack to make it necessary to transfer him to hospital for treatment.
 
 
 46
 Dr. Karl Emerick did not recall which medical officer gave him this information.
 
 
 47
 Shirley Bels indicated in her deposition that Edmond Barksdale had brought on asthma attacks himself and that he had forced coughing spells. Additionally, on June 21, 1983, Mary Jones filed a report which indicates that Bels informed her that Barksdale had again had a "supposed 'asthma attack' " and that when Dr. Emerick was called he informed Bels that Barksdale was not to be sent to the hospital at his whim and that it was to be done only if a medical emergency occurred since Barksdale had tried repeatedly to get all of them to send him out. The report further states that Jones had Barksdale placed in the "bull pen" "for the peace of the other inmates."
 
 
 48
 Read in the light most favorable to appellant, these depositions and medical records raise a substantial question of material fact concerning whether appellees Drs. Myron and Karl Emerick, Mary Jones, and Shirley Bels were deliberately indifferent to Edmond Barksdale's medical needs. Dr. Myron Emerick's unexplained three day delay before granting Barksdale's request to see him approximately one week before Barksdale's final asthma attack when the undisputed evidence indicates that this doctor was aware of Barksdale's condition certainly raises a genuine question of material fact concerning his deliberate indifference under Byrd. Likewise, Dr. Karl Emerick, Mary Jones, and Shirley Bel's notes and documented conversations can easily be construed to indicate that as early as April and as late as one day prior to Barksdale's final asthma attack they did not take Barksdale's complaints seriously, and that they were more concerned with the peace of the other inmates than for Barksdale's health. Therefore, in my opinion summary judgment was improperly granted in their favor.
 
 
 49
 For the foregoing reasons, I respectfully dissent.
 
 
 
 [1]
 The motion asserted as authority for the first proposition the "Affidavit of James Prahler," plaintiff's counsel below and in this Court, and as authority for the second proposition, "Affidavit of Patti M. Tremel," a secretary in his law office. Tremel's affidavit recites that on January 27 or 28 she called the District Judge's chambers, asked to speak to the law clerk, was told he was not there but that his name was Bill Hackel and, upon further inquiry, that he was the son of Sheriff Hackel. The affidavit of Mr. Prahler is neither docketed nor contained in the record and thus apparently was never filed
 At oral argument, much was made of the absence of any sworn statement or other evidence in the record that would contradict the District Judge's later recollection of his disclosure at the status conference, thus raising difficult questions regarding the showing a party seeking disqualification under Sec. 455(a) must make either in the trial court or on appeal. Because we dispose below in text of the recusal issue on the narrow ground that the waiver requirement of Sec. 455(e) was not met, we need not reach these other issues.